UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

GERALD ROLAND,

                Plaintiff,

    -against-

CITY OF NEW YORK, MOHAMMED
RIOS, RAPHAEL MERO,
UNDERCOVER OFFICER NO. C0322
AND JOHN OR JANE DOE 1-10,

             Defendants.

</td><td>

20-CV-05392 (TMR)

**OPINION & ORDER**

</td></tr>
</table>

Dated: May 31, 2024

<u>Samuel Christopher DePaola</u>, Sim & DePaola, LLP, of Bayside, N.Y., argued for plaintiff Gerald Roland.  Also on the brief was <u>Ataur Raquib</u>.

<u>Jeffrey F. Frank</u>, Assistant Corporation Counsel, Special Federal Litigation Division, New York City Law Department, of New York, N.Y., argued for defendants City of New York, Mohammed Rios, Raphael Mero, Undercover Officer No. C0322 and John or Jane Doe 1-10.  Also on the brief was <u>Sylvia O. Hinds Radix</u>, Corporation Counsel of the City of New York.

<u>TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by Designation:</u>

       Before the court is defendants' motion for summary judgment.  Plaintiff,

Gerald Roland, asserts claims arising under both federal and state law against the

City of New York, Detectives Mohammed Rios and Raphael Mero, Undercover

Officer No. 322 and ten unnamed officers of the New York Police Department

(collectively, "defendants").[1]  Plaintiff's complaint asserts causes of action under 42

U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, as well as under state and municipal

law,[2] for defendants' alleged violation of plaintiff's civil rights.  Plaintiff alleges

specifically that defendants violated plaintiff's civil rights when defendants stopped,

searched, arrested and prosecuted plaintiff for the alleged possession and sale of

narcotics.  According to plaintiff, defendants acted under color of state law to violate

plaintiff's civil rights protected by the Fourth, Fifth, Sixth and Fourteenth

Amendments to the U.S. Constitution.

        For the reasons discussed below, the court grants defendants' motion for

summary judgment.

---

[1] There is no indication that the John and Jane Doe defendants have been identified
or served.  "Where discovery has closed and the Plaintiff has had ample opportunity
to identify and serve John Doe Defendants, it is appropriate to dismiss those
Defendants without prejudice."  *Delrosario v. City of New York*, No. 07Civ.2027,
2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010) (citing *Coward v. Town and Village
of Harrison*, 665 F. Supp. 2d 281, 300-01 (S.D.N.Y. 2009)); *see also Johnson v.
McMorrow*, 19-CV-06480, 2023 WL 1797063, at *1 n.1 (S.D.N.Y. Feb. 7, 2023).
Parties notified the court that discovery was completed in a letter dated September
6, 2022.  *See* Status Report at 1, ECF No. 52.  As the identities of the Doe
defendants remain unknown, any claims against these unknown individuals are
dismissed without prejudice for failure to prosecute.

[2] Plaintiff asserts that defendants violated New York City's prohibition against
bias-based profiling.  *See* Compl. ¶¶ 146-50, ECF No. 1 (citing New York City, N.Y.,
Code § 14-151).  Specifically, plaintiff alleges that defendants "impermissibly relied"
on plaintiff's race "as the determinative factor in initiating law enforcement action
against Plaintiff, rather than Plaintiff's behavior or other information or
circumstances that would link Plaintiff to suspected unlawful activity."  Compl. ¶
147.  However, plaintiff has not put forward any facts to substantiate his allegation
that defendants targeted him due to his race, let alone that his race was the
"determinative factor" for his arrest.  Therefore, the court grants defendants' motion
for summary judgment as to this claim.

# BACKGROUND

On January 29, 2016, defendants executed a "buy and bust" operation. Compl. ¶ 18; Pl.'s Resp. to Defs.' R. 56.1 Stmt. Facts ("Pl. Resp. Defs. Stmt. Facts") ¶¶ 1-9, ECF No. 68; Pl.'s Ex. 3, Grand Jury Test. of UC 322 ("UC 322 Grand Jury Test.") at 3:13-4:1, ECF No. 69-3.[3]  A buy and bust is a law enforcement tactic in which an undercover officer poses as a buyer of illegal narcotics.  Pl.'s Ex. 2, Dep. of UC 322 ("UC 322 Dep.") at 9:25-10:20, ECF No. 69-2.  After the undercover completes the purchase, a "field team" subsequently arrests the person from whom the undercover officer purchased the drugs.  *Id.*

In the instant buy and bust operation, defendant Undercover Officer No. 322 ("UC 322") handed two twenty-dollar bills of pre-recorded buy money ("PRBM") to an individual named Jerome Winley in the vicinity of West 114th Street and 7th Avenue.  Defs.' R. 56.1 Stmt. Facts ("Defs. Stmt. Facts") ¶ 1, ECF No. 58; Pl. Resp. Defs. Stmt. Facts ¶ 1.  Then, UC 322 told defendant Detective Mohammed Rios via radio transmission that UC 322 observed Winley walk a short distance westbound on West 114th Street.  Pl. Resp. Def. Stmt. Facts ¶ 2.  According to UC 322, Winley approached and spoke with three individuals — one of whom was plaintiff.  *Id.*

Plaintiff provides contradictory responses to defendants' factual allegation that UC 322 observed plaintiff speaking with Winley.  In his motion papers, plaintiff acknowledges that UC 322 observed Winley "'interacting' with three

---

[3] The facts are drawn from parties' Local Civil Rule 56.1 statements and counterstatements, as well as from materials in the record on which those statements rely.  The court notes where facts are disputed by parties.

individuals including plaintiff."  Pl.'s Mem. Opp. Defs.' Mot. Summ. J. ("Pl. Br.") at

7, ECF No. 66; *see also* Pl.'s R. 56.1 Stmt. Facts ("Pl. Stmt. Facts") ¶ 4, ECF No. 67

("Defendant UC 322 only saw Mr. Roland 'interacting' with Mr. Winley and had no

indication of any involvement in a drug transaction."); Pl. Resp. Defs. Stmt. Facts ¶

2 (declining to dispute the factual assertion that UC 322 observed Winley "approach

and speak with three individuals, one of whom was plaintiff").  Moreover, in his

deposition, plaintiff acknowledged walking with the two other individuals on the

evening of January 29, 2016.  Pl.'s Ex. 1, Dep. of Gerald Roland ("Pl. Dep.") at 28:19-

29:22, 30:3-15, ECF No. 69-1.  However, also in his deposition, and contrary to

plaintiff's briefing, his statement of facts and his response to defendants' statement

of facts, plaintiff denied speaking to or otherwise knowing a person named Winley.

*Id.* at 29:16-17, 53:11-14.

Winley then returned to the corner of West 114th Street and 7th Avenue and

handed UC 322 two Ziploc bags of crack cocaine.  Pl. Resp. Defs. Stmt. Facts ¶ 4.

UC 322 then informed his field team via radio transmission that plaintiff and

the other two individuals that Winley approached "were involved" in the

transaction.[4]  Defs.' Resp. to Pl.'s R. 56.1 Stmt. Facts ("Defs. Resp. Pl. Stmt. Facts")

---

[4] Defendants assert in their opening brief and in their statement of facts that UC
322 told Detective Rios over the radio that UC 322 "observed plaintiff give Winley
items in exchange for money."  Defs.' Mem. Supp. Mot. Summ. J. ("Defs. Br.") at 2,
ECF No. 59; Defs. Stmt. Facts ¶ 3.  Plaintiff does not dispute this assertion in his
response.  Pl. Resp. Defs. Stmt. Facts ¶ 3.  However, the materials that defendants
cite for this assertion do not support it.  To the contrary, the record indicates that
UC 322 did not inform Detective Rios that he had identified plaintiff specifically as
the individual who exchanged something with Winley until later that evening back
at the precinct — *after* plaintiff's arrest.  Suppression Tr. at 13:1-18, 25:20-23,

¶ 3, ECF No. 72; *see also* Defs.' Ex. A, Suppression Hearing Transcript ("Suppression Tr.") at 48:1-25, ECF No. 57-1; Defs.' Ex. B, Dep. of Detective Mohammed Rios ("Rios Dep.") at 39:5-16, ECF No. 57-2; UC 322 Grand Jury Test. at 5:4-16; UC 322 Dep. at 17:6-13.  Specifically, UC 322 informed his field team that "two small items were given to Winley." Suppression Tr. at 48:1-13.  However, UC 322 did not identify which of the three individuals exchanged the items with Winley, nor did UC 322 identify the items that were exchanged.  *See id.*; UC 322 Dep. at 16:8-23.  In that radio transmission, UC 322 instructed his field team to "apprehend all of the individuals" with whom Winley interacted.  UC 322 Dep. at 34:21-23.  UC 322 provided a description of plaintiff's appearance, noting that

---

42:23-43:12, 45:6-19; Rios Dep. at 32:20-23.  In his suppression hearing testimony, Detective Rios stated that UC 322 told him later that day that UC 322 "saw [plaintiff] receive the funds from Mr. Winley."  Suppression Tr. at 43:3-9.  Neither Detective Rios nor UC 322 wrote in any contemporaneous reports that UC 322 had observed plaintiff as the individual who received money from Winley.  *Id.* at 44:2-45:5.  Prior to the arrest and during the drug sale, UC 322 told Detective Rios only that Winley "approach[ed] Mr. Roland and his two cohorts," that there was a "conversation" and that "there was an exchange."  *Id.* at 48:1-13.  According to UC 322 prior to the arrest, all three individuals and Winley were involved in a drug transaction, and plaintiff was not singled out as the individual who exchanged or received anything from Winley.  *Id.*  In UC 322's grand jury testimony and in his deposition taken in the instant matter, UC 322 did not identify plaintiff as the individual who exchanged or received anything from Winley.  UC 322 Grand Jury Test. at 5:4-16; UC 322 Dep. at 16:8-12.  In his deposition, UC 322 stated only that Winley exchanged something with one of the three other men, but UC 322 could not identify the items that were exchanged nor with whom Winley exchanged them.  UC 322 Dep. at 16:8-23.  Where a party's factual assertion is unsupported by the materials cited, the court is free to disregard the assertion.  *Pinede v. NYC Dep't of Environmental Protection*, No. 12-CV-6344, 2015 WL 4251246, at *1 n.4 (E.D.N.Y. July 13, 2015) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001)).  Because defendants' assertion that UC 322 told Detectives Rios and Mero that UC 322 observed plaintiff exchange items with Winley is unsupported by any evidence in the record, the court disregards the assertion.

plaintiff was wearing "a snorkel type coat with fur trim."  Rios Dep. at 40:3-6; UC

322 Grand Jury Test. at 5:4-6.[5]

"A minute or two" after Rios received UC 322's message, Rios approached the

three individuals at 255 West 114th Street and identified himself as a police officer.

Pl. Resp. Defs. Stmt. Facts ¶¶ 6-7.

Then, UC 322 arrived at the location and identified plaintiff and the other

two individuals as the three people that UC 322 observed in the prior exchange with

Winley.  *Id.* ¶ 8.  Officers then arrested plaintiff and the other two individuals.  *Id.*

¶ 9.

What happened next is disputed.  According to defendants, Detective Rios

recovered from plaintiff's right pants pocket two twenty-dollar bills.  Defs. Stmt.

Facts ¶ 10.  After returning to the precinct, officers concluded that the two twenty-

dollar bills were the PRBM that UC 322 used to purchase the narcotics from

Winley.  *Id.*; Rios Dep. at 55:12-20, 57:13-19.  Defendants state that the serial

numbers on the twenty-dollar bills that Detective Rios allegedly recovered from

plaintiff's pocket matched the serial numbers on the bills that UC 322 handed to

Winley.  Defs. Stmt. Facts ¶ 11.  Defendants contend further that Detective Rios

---

[5] At oral argument, counsel for defendants stated that UC 322 singled out plaintiff in his radio transmission to his field team because plaintiff was "wearing a distinctive coat."  Oral Arg. Tr. at 13:12-15, ECF No. 79; *see also* UC 322 Dep. at 32:6-22 (stating that he identified plaintiff to his field team because "[plaintiff's] coat was so distinct"); UC 322 Grand Jury Test. at 5:4-8 (noting to the grand jury that plaintiff's coat was "very distinct").  According to defendants, the fact that UC 322 identified plaintiff's appearance specifically, and not the appearance of the other two individuals, did not "suggest[] that plaintiff was any more involved than the other two" because "all four were ultimately charged."  Oral Arg. Tr. at 13:17-20.

knew that the serial numbers on the cash recovered from plaintiff's pocket were identical to the serial numbers on the cash that UC 322 had given to Winley because Rios "had personally photocopied those twenty-dollar bills prior to the narcotics transaction between plaintiff and Winley." *Id.*; *see also* Defs.' Ex. D, Property Clerk Invoice ("Property Clerk Invoice") at 8, ECF No. 57-4 (showing that two twenty-dollar bills of PRBM were recovered from plaintiff's right pants pocket).

Plaintiff in his deposition offers competing accounts of the authenticity of the PRBM. Plaintiff first denied that any PRBM was recovered from his person. Pl. Dep. at 45:6-14. Then, when presented with the Property Clerk Invoice, plaintiff acknowledged that the PRBM was recovered from him. *Id.* at 48:13-49:9, 50:2-14, 63:3-5. Finally, later on in the same deposition, plaintiff suggested that "maybe [the officers] put [the PRBM]" in his pocket. *Id.* at 72:18-25. But, plaintiff conceded that he did not observe anyone plant PRBM in his pocket. *Id.* at 73:4-7.

The next day, on January 30, 2016, plaintiff was charged with criminal sale of a controlled substance in the third degree, in violation of N.Y. P.L. § 220.39(1). Pl. Resp. Defs. Stmt. Facts ¶ 12. In the criminal complaint filed that day against both plaintiff and Winley, Detective Rios[6] stated that he was informed by UC 322 that UC 322 "purchased crack-cocaine from Defendants JEROME WINLEY and GERALD ROLAND, who acted in concert to sell crack-cocaine." Defs.' Ex. C, Criminal Complaint ("Criminal Compl.") at 1, ECF No. 57-3. The criminal

---

[6] Detective Rios reviewed the criminal complaint and attested to the facts as stated therein. Criminal Compl. at 1, 3.

complaint stated further that UC 322 "observed WINLEY walk . . . towards ROLAND and two separately charged individuals . . . and engage them in a conversation. . . . [UC 322] observed all four individuals walk towards a gate between two buildings on West 114th Street and engage in further conversation. A short time later, WINLEY returned [to UC 322]. . . .[and] handed [UC 322] two (2) small Ziploc bags containing crack-cocaine." *Id.* at 2.

Then, on January 31, 2016, plaintiff paid bail and was released from custody. Defs. Stmt. Facts ¶ 13. However, plaintiff was subsequently arrested for a parole violation and would remain in custody for an additional five weeks. Pl. Resp. Defs. Stmt. Facts ¶ 13.

On February 4, 2016, plaintiff was indicted by a grand jury for criminal sale of a controlled substance in the third degree — the crime for which he was arrested — and criminal possession of a controlled substance in the seventh degree, in violation of N.Y. P.L. § 220.03. Pl. Resp. Defs. Stmt. Facts ¶ 14; Defs.' Ex. G, Indictment of Gerald Roland ("Pl. Indictment"), ECF No. 57-7.

Plaintiff has taken issue with the facts as presented to the grand jury that issued his indictment. Specifically, plaintiff challenges UC 322's description to the grand jury of the events that UC 322 observed. Pl. Stmt. Facts ¶ 6; Pl. Resp. Defs. Stmt. Facts ¶ 14. According to plaintiff, UC 322 did not explain to the grand jury that UC 322 could not identify the items that were exchanged between Winley and the three men, nor did UC 322 explain to the grand jury that UC 322 did not know

which of the three men exchanged the unknown items with Winley.  Pl. Resp. Defs. Stmt. Facts ¶ 14.

On December 17, 2016, the Supreme Court of the State of New York held a suppression hearing to determine whether to exclude from plaintiff's prosecution (1) the recovery of the $40 in PRBM from plaintiff's person and (2) UC 322's subsequent identification of plaintiff as a participant in the drug transaction. Suppression Tr. at 62:4-9.  During that hearing, Detective Rios testified that UC 322 informed him *after* the arrest that UC 322 had observed plaintiff specifically as the individual who received the PRBM from Winley.  Suppression Tr. at 43:3-19, 45:6-9.  At the close of that hearing, the court held that law enforcement lacked "a specific articulable reason for the stop and search of Mr. Roland."  *Id.* at 61:15-17. As a consequence, both the PRBM and the identification of plaintiff by UC 322 were suppressed.  *Id.* at 62:4-9.

Then, on July 11, 2017, the criminal charges against plaintiff were dismissed. Pl. Resp. Defs. Stmt. Facts ¶ 15; Defs.' Ex. H, Certificate of Disposition ("Certificate of Disposition"), ECF No. 57-8.

On July 14, 2020, more than four years after the date of plaintiff's arrest, and more than three years after the dismissal of the criminal charges, plaintiff commenced this action, seeking relief under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 for defendants' alleged violation of plaintiff's civil rights as protected by the Fourth, Sixth and Fourteenth Amendments to the U.S. Constitution.  Compl. ¶ 1.  In addition, plaintiff asserted claims under the laws and constitution of the State

of New York, as well as a claim for municipal liability under *Monell*.[7]  *See generally id.*

On September 6, 2022, parties filed a joint letter informing the court that discovery was complete and proposing for the court a briefing schedule.  *See* Status Report, ECF No. 52.  On November 4, 2022, defendants filed their motion for summary judgment.  *See* Defs. Br.  In addition to their motion papers, each party filed a statement of material facts and a response to the opposing party's statement of material facts in accordance with Local Rule 56.1.  *See* Defs. Stmt. Facts; Defs. Resp. Pl. Stmt. Facts; Pl. Stmt. Facts; Pl. Resp. Defs. Stmt. Facts.  In support of their motions, each party submitted also to the court for consideration transcripts of certain depositions, along with relevant documents filed in criminal proceedings against plaintiff.  *See* Decl. of Jeffrey F. Frank, ECF No. 57; Decl. of Ataur Raquib, ECF No. 69.

On March 28, 2024, the court held oral argument.  *See* Oral Arg. Tr. at 1, ECF No. 79.

## JURISDICTION AND LEGAL STANDARD

This court has jurisdiction over plaintiff's claims arising out of federal law under 28 U.S.C. §§ 1331 and 1343(a)(3).  The court exercises supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(a).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

---

[7] Plaintiff later withdrew his *Monell* claim.  Pl. Resp. Defs. Stmt. Facts ¶ 18.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a); Fed. R. Civ. P. 56(c)(1).

"A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012)). The court is required to "draw[] all reasonable inferences in favor of [the] non-movant." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).

"[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by 'point[ing] to an absence of evidence to support an essential element of the nonmoving party's case.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (alteration in original) (citation omitted). The burden then "shifts to the nonmoving party to come forward with persuasive evidence that his claim is not 'implausible.'" *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). The non-moving party is required to come forward with "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, a party opposing a motion for

summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted).

In reviewing each party's briefing, the court assumes no obligation to search the record in support of a party's arguments. *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("[Rule 56] does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." (citing *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030-31 (9th Cir. 2001))). Rather, "[i]t is the job of the [p]laintiff's counsel, not the [c]ourt, to identify evidence sufficient to avoid summary judgment." *Smith v. Ward Leonard Elec. Co., Inc.*, No. 00 Civ. 3703, 2004 WL 1661098, at *3 n.2 (S.D.N.Y. July 23, 2004). "A district court may even 'grant summary judgment on the ground that the nonmovant's papers failed to cite to the record,' as long as the nonmovant is given actual notice of the requirement." *Collins v. City of New York*, 14-CV-08815, 2017 WL 11582468, at *2 (S.D.N.Y. July 10, 2017) (quoting *Amnesty Am.*, 288 F.3d at 471). However, while the Federal Rules of Civil Procedure ("FRCP") require that the court "need consider only the cited materials," the court "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 does not create substantive rights;

instead, it "provides 'a method for vindicating federal rights elsewhere conferred.'" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (citation omitted).  "The validity of the claim must [therefore] be judged by reference to the specific constitutional standard which governs that right . . . ."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (alterations in original) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

The "core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors.'"  *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (quoting *Felder v. Casey*, 487 U.S. 131, 141 (1988)).  42 U.S.C. § 1981 protects against the "impairment under color of State law" the right of all persons "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."[8]  42 U.S.C. § 1985(3) provides a cause of action for any person injured or deprived of equal protection of the laws where "two or more persons in any State or Territory conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws."

---

[8] To the extent that plaintiff relies on 42 U.S.C. § 1981 to assert his equal protection claim, the Second Circuit has held that § 1983 "constitutes the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units."  *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)).  Section 1981 does not provide a separate private right of action against state actors.  *Id.* at 621.  As a result, plaintiff's equal protection claim arises out of § 1983, not § 1981.

## DISCUSSION

### I.   Whether certain of plaintiff's federal law claims are time barred

Defendants contend that certain of plaintiff's federal claims are barred by the statute of limitations.  Defs. Br. at 5.  As such, the court considers first whether any of plaintiff's federal claims is time barred.

#### A.   Legal framework

Section 1983 does not provide a specific statute of limitations.  *Hogan v. Fischer*, 783 F.3d 509, 517 (2d Cir. 2013).  Therefore, "courts apply the statute of limitations for personal injury actions under state law."  *Id.* (citations omitted).  As a result, § 1983 actions filed in the State of New York are subject to New York's three-year statute of limitations.  *Id.*

Although state law provides the applicable statute of limitations, federal law governs the date on which the claim accrues.  *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) (citing *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir. 1987)).  "Under federal law, the claim accrues when the plaintiff 'knows or has reason to know' of the injury that is the basis of the action."  *Id.* (quoting *Cullen*, 811 F.2d at 725).  "[A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim."  *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 372 (E.D.N.Y. 2012) (alteration in original) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999)).  Instead, "a claim will accrue when the plaintiff knows, or should know, enough of

the critical facts of injury and causation to protect himself by seeking legal advice."
*Id.*

### B.   Analysis

The court addresses first whether certain of plaintiff's claims arising under federal law are barred by the statute of limitations.  Plaintiff was arrested on January 29, 2016, Pl. Resp. Defs. Stmt. Facts ¶¶ 1, 9, and released from custody on January 31, 2016.  *Id.* ¶ 13.

Defendants argue that plaintiff's claims for (1) unlawful search and seizure, (2) false arrest and imprisonment, (3) excessive force, (4) malicious abuse of process and (5) equal protection are time barred.  Defs. Br. at 4-5.  In addition, defendants assert that plaintiff's claims for conspiracy and failure to intervene with respect to the above alleged constitutional violations are time barred.  Defs. Br. at 4-6. According to defendants, each of these claims accrued on January 29, 2016, the date of plaintiff's arrest.  Defs. Br. at 5.  Plaintiff did not file his complaint until July 14, 2020.  *See* Compl.  As the statute of limitations for a § 1983 claim in the State of New York is three years, defendants assert that these seven claims are barred by the statute of limitations.  Defs. Br. at 5-6.

Plaintiff responds that defendants' arguments pertaining to the statute of limitations are "baseless by definition" because "defendants have not cited to any evidence in support of their contentions."  Pl. Br. at 20.

The court concludes that the above claims arising under federal law are time barred because the claims accrued on the date of plaintiff's arrest or on the date

that the criminal complaint was filed, and plaintiff failed to file his complaint

within the three-year statute of limitations.

Plaintiff's claims for unlawful search and seizure, excessive use of force and

malicious abuse of process are time barred, as these claims accrued on January 29,

2016, the date of plaintiff's arrest. The Second Circuit has held that a claim for an

unlawful search accrues on the date of the allegedly unlawful search. *Rudaj v.*

*Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) (summary order); *see also Wallace v.*

*New York City*, 22-CV-3414, 2022 WL 2334056, at *3 (S.D.N.Y. June 27, 2022).

Further, a claim for excessive force and a claim for malicious abuse of process

accrue on the date of arrest and detention. *See, e.g.*, *Palmer v. City of New York*,

315 F. App'x 350 (2d Cir. 2009) (summary order) (excessive force); *Steinbergin v.*

*City of New York*, No. 21-536, 2022 WL 1231709, at *3 (2d Cir. Apr. 27, 2022)

(malicious abuse of process). The allegedly unlawful search and arrest occurred on

January 29, 2016. Pl. Resp. Defs. Stmt. Facts ¶¶ 1, 9-10. Plaintiff did not file his

complaint until July 14, 2020.  *See* Compl.  As a result, these claims are barred by the statute of limitations.[9]

In addition, plaintiff's claim for false arrest and imprisonment is time barred because such a claim accrues "when legal process [i]s initiated against [the plaintiff]."  *Steinbergin*, 2022 WL 1231709, at *2 (alteration in original) (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)).  Legal process is initiated "at least by the point a criminal defendant is arraigned on charges."  *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017) (citing *Wallace*, 549 U.S. at 391).  Here, plaintiff's criminal complaint was filed on January 30, 2016, *see* Criminal Compl. at 3, and plaintiff was arraigned on charges on January 31, 2016.  Pl. Dep. at 51:23-52:4.  As a consequence, plaintiff's claim for false arrest and imprisonment is time barred.

Further, plaintiff's equal protection claim under 42 U.S.C. § 1983 is time barred.  An equal protection claim accrues "when the plaintiff 'knew or should have known of the disparate treatment.'"  *Tang v. Visnauskas*, 847 F. App'x 24, 27 (2d

---

[9] On March 20, 2020, Governor Andrew Cuomo signed Executive Order 202.8, which tolled the state statute of limitations due to the Covid-19 pandemic.  N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.  Subsequent executive orders continued the toll until November 3, 2020.  *Ventilla v. Pacific Indemnity Co.*, 20-cv-08462, 2021 WL 5234404, at *1 n.2 (S.D.N.Y. Nov. 10, 2021).  In total, the statute of limitations was tolled for 228 days.  *Id.*  Parties agree that the Governor's Executive Order applies to § 1983 suits in federal courts.  Defs.' Reply Mem. Supp. Mot. Summ. J. ("Defs. Reply Br.") at 3, ECF No. 73; *see, e.g.*, *McDonald v. City of New York*, 20-CV-4614, 2022 WL 1469395, at *3-4 (E.D.N.Y. May 10, 2022).  However, even considering the tolling, plaintiff failed to file within the statute of limitations the claims that accrued on the date of his arrest.  After applying the tolling, plaintiff was required to file his complaint as to these claims by September 11, 2019.  Plaintiff filed his complaint on July 14, 2020.  *See* Compl.  As a result, the claims that accrued on the date of plaintiff's arrest are time barred.

Cir. 2021) (summary order) (quoting *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013)).  Here, plaintiff alleges that defendants "illegally approached, stopped, searched, and then falsely arrested him, due solely to their racially discriminatory prejudices against African-American males."  Compl. ¶ 37.  As a result, plaintiff "knew or should have known" of the allegedly discriminatory treatment against plaintiff on the date of his arrest, January 29, 2016.  *See Baa v. Gonzalez*, 22-CV-2602, 2023 WL 5278482, at *4 (S.D.N.Y. Aug. 16, 2023) (stating that the statute of limitations for an equal protection claim arising out of an allegedly discriminatory arrest accrues on the date of the arrest, which was "a discrete act of alleged discrimination"); *Hagans v. Nassau Cnty. Police Dep't*, 18-CV-1918, 2020 WL 1289529, at *6 n.5 (E.D.N.Y. Mar. 18, 2020); *Coleman v. City of New York*, No. 08-CV-5276, 2009 WL 3381541, at *3 (E.D.N.Y. Oct. 20, 2009) (holding that an equal protection claim arising out of an allegedly unlawful arrest accrued at the time of arrest).  Consequently, this claim is time barred.

In addition, plaintiff's conspiracy claim is time barred with respect to plaintiff's claims for unlawful search and seizure, false arrest and imprisonment, excessive force, malicious abuse of process and equal protection.  Plaintiff alleges that defendants "engaged in a conspiracy . . . to deprive Plaintiff of his rights to engage in protected speech or activities, to be free from unreasonable searches and seizures, to be afforded a fair trial, to not be deprived of his liberty or property without due process of law, or of the privileges and immunities under the laws and constitutions of the United States and of the State of New York."  Compl. ¶ 173.

Claims alleging civil conspiracy "accrue[] . . . [at] the time of commission of the overt act alleged to have caused damages." *Chodos v. FBI*, 559 F. Supp. 69, 74 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 289 (2d Cir. 1982). Therefore, like the underlying claims themselves, plaintiff's claim for conspiracy with respect to the above federal claims is barred by the statute of limitations.

Finally, plaintiff's failure to intervene claim is also time barred with respect to plaintiff's claims for unlawful search and seizure, false arrest and imprisonment, excessive force, malicious abuse of process and equal protection. "A[n] . . . officer may be liable for failure to intervene under Section 1983 where '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 108 (N.D.N.Y. 2023) (alterations in original) (quoting *Gerasimou v. Cillis*, No. 15-CV-6892, 2022 WL 118748, at *5 (E.D.N.Y. Jan. 12, 2022)). "The statute of limitations for a claim based on failure to intervene accrues when the failure to intervene occurs." *Id.* (citing *Roundtree v. City of New York*, No. 15-CV-6582, 2018 WL 443751, at *3 (S.D.N.Y. Jan. 16, 2018)). As the allegedly unlawful conduct giving rise to each of these claims accrued on the date of plaintiff's arrest or on the date that charges were filed against plaintiff,

plaintiff's claim for failure to intervene with respect to these claims is also time

barred.[10]  *See id.*

## II.   Whether plaintiff's state law claims fail for failure to satisfy the notice of claim requirement

Defendants contend also that each of plaintiff's state law claims is barred for

failure of plaintiff to satisfy the requirement under New York State law that a

plaintiff file a notice with the City prior to commencing legal action.  Defs. Br. at 16-

17.  Plaintiff maintains that defendants "are precluded from now arguing that

Plaintiff has failed" to comply with the notice of claim requirement.  Pl. Br. at 20-21.

Therefore, the court addresses next whether each of plaintiff's state law claims fails

due to plaintiff's failure to file a notice of claim.

### A.   Legal framework

In New York City, "[n]o action . . . shall be . . . maintained against the [City of

New York] or any agency or an employee unless notice of claim shall have been

---

[10] Defendants concede that plaintiff's claims under § 1983 for malicious prosecution and deprivation of the right to a fair trial, as well as conspiracy and failure to intervene with respect to those claims, are not time barred, as the statute of limitations for those claims "does not accrue until there is a favorable termination of the plaintiff's criminal proceedings."  *Panetta v. Cassel*, 20-CV-2255, 2020 WL 2521533, at *4 (S.D.N.Y. May 18, 2020); *Smalls v. Collins*, 10 F.4th 117, 135 (2d Cir. 2021); *see* Defs. Br. at 5 n.1.  The favorable termination of criminal proceedings in the instant case occurred on July 11, 2017, the date that the criminal complaint against plaintiff was dismissed.  *See* Certificate of Disposition.  Plaintiff filed his complaint on July 14, 2020, more than three years after the date on which the claims accrued.  *See* Compl.  However, because the Governor's executive order tolled the statute of limitations from March 20, 2020, to November 4, 2020, *see* N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202, plaintiff's claims for malicious prosecution and deprivation of the right to a fair trial are timely.

made and served upon the City in compliance with section fifty-e of this chapter and within ninety days after the claim arises." N.Y. Gen. Mun. L. § 50-k(6).

Section § 50-e(1)(a) in turn states:

> [W]here a notice of claim is required by law as a condition precedent to the commencement of an action . . . against a public corporation . . . or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises.

However, when a state tort claim is brought against a city employee in his or her individual capacity, the notice requirement is triggered only where the city has a statutory indemnification obligation:

> Service of the notice of claim upon an . . . employee of a public corporation shall not be a condition precedent to the commencement of an action . . . against such person. If an action . . . is commenced against such person, but not against the public corporation, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law.

Gen. Mun. Law § 50-e(1)(b).

General Municipal Law § 50-k(3) states the circumstances in which the City of New York is obligated to indemnify its employees:

> The city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state and federal court . . . provided that the act or omission from which such judgment . . . arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

Gen. Mun. Law. § 50-k(3).

"The purpose of the notice of claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Fincher v. Cnty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) (citing *Brown v. N.Y.C. Transit Auth.*, 568 N.Y.S.2d 54, 55, 172 A.D.2d 178, 180 (1st Dep't 1991)). The notice of claim requirement applies "equally to state tort claims brought as pendent claims in a federal civil rights action." *Id.* (citing *Russell Pipe & Foundry Co. v. City of New York*, No. 94-8642, 1997 WL 80601, at *15 (S.D.N.Y. Feb. 25, 1997)).

"Notice of claim requirements 'are construed strictly by New York state courts.'" *Hardy*, 164 F.3d at 793 (quoting *Am. Tel. & Tel. Co. v. N.Y.C. Dep't of Hum. Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990)). Therefore, "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Id.* at 794 (citing *Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 259 (S.D.N.Y. 1989)).

### B.   Analysis

#### 1.   City of New York

The court turns first to whether plaintiff's state law claims against New York City ("the City") fail due to plaintiff's failure to satisfy the notice of claim requirement.

Defendants argue that plaintiff's claims under New York State law fail because "he did not file a notice of claim within 90 days of the incident alleged in the complaint." Defs. Br. at 16. Defendants note that it is undisputed that plaintiff did not file a notice of claim. *Id.* at 17 (citing Defs. Stmt. Facts ¶ 19). Defendants note also that plaintiff did not file any of his state law claims within "one year and ninety days after the happening of the event upon which the claim is based." *Id.* (citing N.Y. Gen. Mun. L. § 50-i(1)). Defendants assert, as a result, that the court is required to grant defendants' motion for summary judgment as to all of plaintiff's state law claims against *all* defendants. *Id.*

Plaintiff argues that "[d]efendants are precluded from now arguing that plaintiff has failed to comply with a condition precedent [to plaintiff's state law claims], e.g., the notice of claim requirement." Pl. Br. at 21. According to plaintiff, FRCP 9(c) "requires that any assertion that a condition precedent has not been satisfied be done 'with particularity' in defendants' pleadings." *Id.* Plaintiff contends that defendants' Answer failed "to articulate with any particularity, whatsoever, which of Plaintiff's claims failed to satisfy the notice of claim requirement." *Id.* Plaintiff asserts on this basis that his state law claims should

survive defendants' motion for summary judgment.[11]  *Id.*

The court addresses first plaintiff's contention that defendants "are precluded" from raising as an affirmative defense plaintiff's failure to file a notice of claim.  *Id.* (citing Fed. R. Civ. P. 9(c)).  "Under New York law, '[a] notice of claim is a condition precedent to bringing a tort claim against a municipality.'"  *Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir. 2019) (summary order) (alteration in original) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358, 429 N.E.2d 1158 (1981)).  FRCP 9(c) addresses pleading requirements when a plaintiff's claim is subject to a condition precedent:

> In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.  But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

Therefore, FRCP 9(c) imposes on plaintiff first a requirement that he "allege generally that all conditions precedent have occurred or been performed."  *See Fireman's Fund Ins. Co., Inc. v. Schuster Films, Inc.*, 811 F. Supp. 978, 982 (S.D.N.Y. 1993) ("The second sentence of [FRCP 9(c)] applies to a defendant's denial

---

[11] Plaintiff argues also that defendants' statute of limitations and notice of claim defenses are untimely because defendants "did not assert their affirmative defense to Plaintiff's state and federal claims in a pre-motion answer to dismiss said claims due to statute of limitations."  Pl. Br. at 21.  However, defendants argue that they asserted this defense at the earliest opportunity — in their answer to plaintiff's complaint.  *See* Defs. Reply Br. at 4; Answer ¶ 211.  "[T]he statute of limitations is ordinarily an affirmative defense that must be raised in the answer."  *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 337 (S.D.N.Y. 2021) (quoting *Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 132 (2d Cir. 2021)); *see also* Fed. R. Civ. P. 12(b) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.").  As a consequence, the court rejects plaintiff's argument.

of performance of a condition precedent in response to a plaintiff's general

[assertion] that all conditions precedent have been complied with."). In the instant

case, plaintiff failed to satisfy this requirement. Plaintiff did not mention in his

complaint either the notice of claim requirement or the occurrence of any conditions

precedent to plaintiff's suit. *See generally* Compl. Nevertheless, defendants raised

as an affirmative defense plaintiff's failure to file a notice of claim. *See* Answer ¶

211. In their answer, defendants stated that plaintiff's state law claims "may be

barred in whole or in part by reason of Plaintiff's failure to comply with the

requirements of one or more sections of the New York General Municipal Law §§

50-(e), et seq." *Id.* In light of plaintiff's failure to "allege generally" the occurrence

of any conditions precedent to his suit, defendants' assertion in their answer was

sufficient to raise as an affirmative defense plaintiff's failure to comply with the

notice of claim requirement. Accordingly, defendants are not precluded from

asserting as an affirmative defense plaintiff's failure to file a notice of claim.

The court concludes that plaintiff's state law claims against the City fail

because plaintiff did not file a notice of claim with the City. "No action . . . shall be .

. . maintained against the [City of New York] or any agency or an employee unless

notice of claim shall have been made and served upon the City . . . ." N.Y. Gen.

Mun. L. § 50-k(6). "New York state courts strictly construe Notice of Claim

requirements, which federal courts must apply in exercising supplemental

jurisdiction over state law claims." *Matthews v. City of New York*, 889 F. Supp. 2d

418, 448 (E.D.N.Y. 2012) (internal citation omitted) (citing *Excell v. City of New*

*York*, No. 12 Civ. 2874, 2012 WL 2675013, at *4 (E.D.N.Y. July 5, 2012)).  "Failure

to comply" with the notice of claim requirement "ordinarily requires a dismissal for

failure to state a cause of action."  *Hardy*, 164 F.3d at 794 (citing *Brown*, 717 F.

Supp. at 259).  "The burden is on the plaintiff to demonstrate compliance with the

Notice of Claim requirement."  *Matthews*, 889 F. Supp. 2d at 448 (quoting *Horvath*

*v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006)).

Here, it is undisputed that plaintiff did not file a notice of claim with the

City.  Defs. Stmt. Facts ¶ 19; Pl. Resp. Defs. Stmt. Facts ¶ 19.  Consequently, the

court grants against the City only defendants' motion for summary judgment as to

plaintiff's state law claims.

## 2.   Individual defendants

Having determined that plaintiff's state law claims against the City are

barred due to plaintiff's failure to satisfy the notice of claim requirement, the court

turns next to whether plaintiff's failure to satisfy the notice of claim requirement

bars plaintiff's state law claims against each *individual* defendant.  The court notes

that neither party discusses in their briefing the applicability to the individual

defendants of the notice of claim requirement.  However, this Court and other

courts of this Circuit have recognized that failure to satisfy the notice of claim

requirement will bar suit against a municipal employee in their individual capacity

only if the city is statutorily obligated to indemnify the employee.  *See, e.g.*,

*Bradshaw v. City of New York*, 17 Civ. 1199, 2017 WL 6060781, at *17 (S.D.N.Y.

Dec. 7, 2017) ("When a tort claim is brought against a city employee in his or her

individual capacity, the Notice requirement is triggered only where the city has a statutory indemnification obligation[.]"); *Palmer v. City of New York*, 564 F. Supp. 3d 221, 241-42 (E.D.N.Y. 2021) (noting that parties failed to address the indemnification limitation on the notice of claim requirement and directing parties to file supplemental briefing on the issue) (citing N.Y. Gen. Mun. L. § 50-k(6); N.Y. Gen. Mun. L. § 50e(1)(b)); *see also Palmer v. City of New York*, 19-CV-5542, 2023 WL 3455058, at *4 (E.D.N.Y. May 15, 2023) (denying defendants' motion to dismiss state law claims filed against individual officers and holding that the notice of claim requirement as to such officers "turns on indemnification").

"The obligation to indemnify in turn depends upon the resolution of the fact-sensitive question of whether [the individual defendants] were acting within the scope of their employment" when they committed the allegedly tortious acts. *Int'l Shared Servs., Inc. v. Cnty. of Nassau*, 222 A.D.2d 407, 634 N.Y.S.2d 722, 724 (1995).

Plaintiff asserts nine state and municipal law claims against the individual defendants: (1) unlawful search and seizure, (2) false arrest and false imprisonment, (3) assault and battery, (4) malicious prosecution, (5) malicious abuse of process, (6) denial of the right to fair trial, (7) bias-based profiling under New York City Law, (8) deprivation of rights and denial of equal protection, and (9) failure to intervene. *See* Compl. ¶¶ 69-194.

Parties do not address in their briefing the indemnification limitation to the notice of claim requirement. So, the court is unable to determine without additional

briefing whether the city was obligated to indemnify one or more of the individual
defendants against liability for one or more of plaintiff's claims.  As a result, the
court is also unable to determine without additional briefing whether plaintiff's
failure to satisfy the notice of claim requirement bars plaintiff's state law claims
against the individual defendants.[12]

However, the court concludes that it need not determine whether the notice
of claim requirement would apply to the individual defendants in the instant case
because, even if the court were to determine that the notice of claim requirement
did not apply, each of the state law claims that plaintiff asserts would still fail for
two reasons.  First, plaintiff's state law intentional tort claims are barred by the
applicable statute of limitations under New York State law.  *See* N.Y. C.P.L.R. §
215(3).  Second, plaintiff's New York State constitutional claims fail, as those claims
are duplicative of plaintiff's § 1983 claims.  *Allen v. Antal*, 665 F. App'x 9, 13 (2d
Cir. 2016) (summary order) (citing *Brown v. State of New York*, 89 N.Y.2d 172, 192,
674 N.E.2d 1129 (1996)).

Plaintiff's claims for false arrest and false imprisonment, assault and battery,
malicious abuse of process and malicious prosecution are barred for failure to meet

---

[12] At oral argument, counsel for defendants noted the disagreement among the
courts regarding the applicability to individual defendants of the notice of claim
requirement.  Oral Arg. Tr. at 60:3-10.  Counsel stated further that the city's
position is "that the courts that have found that [the notice of claim] is required" for
state law claims against individual officers "got it correct."  *Id.*  However, counsel
for defendants argued also that, even if the notice of claim requirement did not
apply to plaintiff's state law claims against the individual defendants, those claims
would still be barred by the statute of limitations.  *Id.* at 63:13-19.

the applicable statute of limitations for intentional torts under New York State

law.[13]  *See Jean-Laurent v. Bowman*, No. 12-CV-2954, 2014 WL 4662232, at *4

(E.D.N.Y. Sept. 7, 2014) (stating that, to the extent that plaintiff alleged conduct for

which the City had no obligation to indemnify the individual defendants, those

claims were still barred by the one year statute of limitations for intentional torts

under New York law).  That is, even if plaintiff were to succeed in demonstrating

that defendants' conduct in the instant case was outside the scope of their

employment, the applicable statute of limitations for intentional torts would still

bar plaintiff's claims.

    To start, N. Y. C.P.L.R. § 215(3) provides a one-year statute of limitations for

"an action to recover damages for assault, battery, [and] false imprisonment."  *See*

*also Coyne v. State*, 120 A.D.2d 769, 501 N.Y.S.2d 505 (1986) (applying a one-year

statute of limitations to a false arrest claim).  In addition, New York State courts

have held that the one-year limitations period in § 215(3) applies also to malicious

abuse of process claims.  *See, e.g.*, *Hansen v. Petrone*, 124 A.D.2d 782, 508 N.Y.S.2d

500 (1986).  Plaintiff's assault and battery and malicious abuse of process claims

accrued on January 29, 2016, the date of plaintiff's arrest.  *McElveen v. Police Dep't*

*of City of New York*, 70 A.D.2d 858, 418 N.Y.S.2d 49 (1979) (assault); *Wright v. City*

*of New York*, 18cv10769, 2019 WL 2869066, at *8 (S.D.N.Y. July 2, 2019) (citing

---

[13] As noted above, *supra* Section II.B.1, if the notice of claim requirement did apply
to plaintiff's claims against the individual defendants, those claims would be barred
due to plaintiff's failure to file timely a notice of claim with the city.

*Cunningham v. State of New York*, 53 N.Y.2d 851, 853, 422 N.E.2d 821 (1981)) (abuse of process). Plaintiff's false arrest and imprisonment claim accrued on January 31, 2016, the date of plaintiff's release from custody.[14] *See Palmer v. City of New York*, 226 A.D.2d 149, 640 N.Y.S.2d 92 (1996). Plaintiff filed the instant complaint on July 14, 2020. *See* Compl. Therefore, plaintiff's state law claims for assault and battery, false arrest and imprisonment and malicious abuse of process are time-barred.

Further, plaintiff's state law claim for malicious prosecution is time barred. Section 215(3) provides for a one-year statute of limitations for state law malicious prosecution claims. N.Y. C.P.L.R. § 215(3). Like its federal counterpart, a New York State law claim for malicious prosecution "accrues upon the favorable termination of the underlying criminal proceedings, e.g., the dismissal of charges against the plaintiff." *Gordon v. Suffolk Cnty.*, 21-cv-1653, 2022 WL 17585706, at *4 (E.D.N.Y. Dec. 9, 2022). Therefore, this claim began to accrue on July 11, 2017. *See* Certificate of Disposition. As plaintiff did not file his complaint until July 14, 2020, plaintiff's state law claim for malicious prosecution is time barred.

Finally, plaintiff's state law claims for unlawful search and seizure, denial of equal protection and denial of the right to fair trial fail, as they are duplicative of

---

[14] Plaintiff disputes that he was released from custody on January 31, 2016, because, according to plaintiff, he was "caused to have a parole violated and was held for an additional five (5) weeks." Pl. Resp. Defs. Stmt. Facts ¶ 13. However, even were plaintiff's false arrest and imprisonment claim to have accrued on the date five weeks later when he was released from custody for the parole violation, plaintiff's state law false arrest and imprisonment claim would still be time barred by the one-year statute of limitations.

plaintiff's § 1983 claims.  These three state law claims arise out of the New York State Constitution.  *See* Compl. ¶¶ 74, 137, 159.  "The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983."  *Antal*, 665 F. App'x at 13 (citing *Brown*, 89 N.Y.2d at 192, 674 N.E.2d at 1141).  Federal courts "routinely dismiss the state constitutional claims on the ground that Section 1983 provides an alternative available remedy."  *Rodriguez v. Cnty. of Nassau*, 18-CV-03845, 2023 WL 2667076, at *5 n.5 (E.D.N.Y. Mar. 28, 2023) (citing *Antal*, 665 F. App'x at 13-14); *see also Sullivan v. Metro. Transit Auth. Police Dep't*, 13 Civ. 7677, 2017 WL 4326058, at *10 (S.D.N.Y. Sept. 13, 2017) ("[C]ontrary to plaintiff's arguments, it is the availability of remedies under Section 1983, and not their success, that precludes a New York State Constitution claim.").  Accordingly, plaintiff cannot assert a private right of action for these claims under the New York State Constitution, as these claims "are remediable under Section 1983."  *Maldonado v. City of New York*, No. 11 Civ. 3514, 2014 WL 787814, at *12 (S.D.N.Y. Feb. 26, 2014) (quoting *Batista v. City of New York*, No. 05 Civ. 8444, 2007 WL 2822211, at *9 (S.D.N.Y. Sept. 25, 2007)).[15]

In sum, the court grants defendants' motion for summary judgment as to all of plaintiff's state law claims.

---

[15] Because plaintiff cannot maintain any of his state law claims, his state law failure to intervene claim fails as well, as failure to intervene is derivative of his underlying state law claims.  *See Jeanty v. Cerminaro*, 21-1974-cv, 2023 WL 325012, at *6 n.4 (2d Cir. Jan. 20, 2023) (affirming dismissal of failure to intervene claim where underlying claims were properly dismissed).

### III.    Plaintiff's remaining § 1983 claims

The court addresses next plaintiff's malicious prosecution claim and fair trial claim.  Neither of these claims is time barred, as they accrued on the date of the dismissal of the criminal complaint against plaintiff.  The criminal complaint was dismissed on July 11, 2017.  *See* Certificate of Disposition.  Plaintiff filed the instant action on July 14, 2020.  *See* Compl.  Due to the tolling of the statute of limitations, *see* N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202, plaintiff filed the malicious prosecution claim and fair trial claim within the three-year statute of limitations. The court considers each claim in turn.

### A.    Malicious prosecution

#### 1.    Legal framework

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free from unreasonable seizure of the person — i.e., the right to be free from unreasonable or unwarranted restraints on personal liberty."  *Singer*, 63 F.3d at 116.  To establish a § 1983 claim of malicious prosecution, plaintiff is required to show conduct by defendants that is tortious under New York law and that results in a constitutionally cognizable deprivation of liberty.  *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citing *Singer*, 63 F.3d at 116-17)).  To succeed on a claim under New York law for malicious prosecution, plaintiff is required to show that: (1) defendants commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in plaintiff's favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was

instituted with malice.  *Id.* at 143 (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).

The existence of probable cause is a "complete defense" to a malicious prosecution claim.  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250 (1983)). "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon*, 60 N.Y.2d at 82, 455 N.E.2d at 1250).  In determining whether probable cause exists to prosecute, the court considers "the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 611 (E.D.N.Y. 2017).

"[I]ndictment by a grand jury creates a presumption of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (citing *Savino*, 331 F.3d at 72).  That presumption may be rebutted only "by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72 (quoting *Colon*, 60 N.Y.2d at 83, 455 N.E.2d at 1251).

"[I]t is plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Savino*, 331 F.3d at 73.  Plaintiff cannot satisfy this burden "with mere 'conjecture' and 'surmise' that [the] indictment was procured as a result of conduct undertaken by the defendants in bad

faith." *Id.* (citations omitted).  Instead, plaintiff must submit evidence "sufficient

for a reasonable jury to find that his indictment was procured as a result of police

conduct undertaken in bad faith." *Id.*

"Where there is some indication in the police records that, as to a fact crucial

to the existence of probable cause, the arresting officers may have 'lied in order to

secure an indictment,' and 'a jury could reasonably find that the indictment was

secured through bad faith or perjury,' the presumption of probable cause created by

the indictment may be overcome." *Manganiello*, 612 F.3d at 162 (citation omitted).

In addition, where there is probable cause for the arrest, "a plaintiff pursuing

a malicious prosecution claim must establish that probable cause somehow

dissipated between the time of arrest and the commencement of the prosecution."

*Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y 2012) (internal

quotation marks omitted).  "In order for probable cause to dissipate, the groundless

nature of the charges must be made apparent by the discovery of some intervening

fact." *Lowth*, 82 F.3d at 571.  Absent such a discovery, the probable cause that

supported the arrest "continues to exist at the time of the prosecution." *Johnson v.

Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (summary order).

### 2.    Analysis

The court addresses next whether plaintiff's malicious prosecution claim fails

as a matter of law.  Parties do not dispute that the first two elements of a malicious

prosecution claim are satisfied, as criminal proceedings were initiated against

plaintiff, and those proceedings were terminated in his favor.  *See* Criminal Compl.;

Certificate of Disposition; *see also Thompson v. Clark*, 596 U.S. 36, 49 (2022)

(holding that "[a] plaintiff need only show that the criminal prosecution ended

without a conviction" to satisfy the favorable termination requirement).  With

respect to the third element — that there was no probable cause for the proceeding

— the court notes that plaintiff was indicted by a grand jury, which creates the

presumption that there was probable cause for his prosecution.  Pl. Resp. Defs.

Stmt. Facts ¶ 14; Pl. Indictment.

Plaintiff maintains that he has demonstrated that the indictment was

procured through "fraud, perjury, the suppression of evidence or other police

conduct undertaken in bad faith."  Pl. Br. at 15-16 (quoting *Savino*, 331 F.3d at 72).

Plaintiff relies on various material in the record to support this assertion with

respect to the separate defendants.  First, with respect to UC 322, plaintiff asserts

that "UC 322 lied under oath before the grand jury to obtain an indictment against

plaintiff" by "omitt[ing] that he did not see crack-cocaine exchanged between

plaintiff and [Winley] and . . . that he did not observe who among the three

individuals exchanged crack-cocaine with [Winley]."  *Id.* at 16.  Plaintiff cites these

alleged omissions as evidence that UC 322 "fabricated information to the grand

jury."  *Id.*  Second, and with respect to Detective Rios, plaintiff argues that "the

record suggests that Detective Rios fabricated allegations contained within the

complaint because they rely on UC 322 whose testimony conflicts with the

complaint."  Pl. Br. at 16 (citing Pl. Stmt. Facts ¶ 6).  Third, plaintiff argues that

UC 322 "falsely communicated" to defendants Rios and Mero "that [UCC 322]

observed the exchange of crack-cocaine between [Winley] and Plaintiff," although

plaintiff fails to cite to any material in the record for this assertion.  *Id.* at 14.

Plaintiff contends that, as a result of these alleged fabrications, "plaintiff overcomes

the rebuttable presumption of probable cause."  *Id.* at 16.  The court considers each

argument in turn.

### a.  UC 322's grand jury testimony

The court examines first plaintiff's allegation that UC 322's alleged omissions

in his grand jury testimony rebut the presumption of probable cause created by the

indictment.

Plaintiff insists that an alleged inconsistency between UC 322's grand jury

testimony and his deposition testimony in the instant matter establishes that UC

322 fabricated evidence to secure plaintiff's indictment.  Pl. Br. at 14, 16.  Plaintiff

notes that in UC 322's deposition, UC 322 stated that he could not discern on the

night of plaintiff's arrest which of the three individuals exchanged the unidentified

items with Winley.  *Id.* at 14. According to plaintiff, UC 322's failure to state

expressly in his grand jury testimony that he could not identify which of the three

individuals exchanged the unidentified items with Winley amounts to a "lie[] under

oath" sufficient to overcome the presumption of probable cause.  *Id.* at 16.

Defendants respond that there are no inconsistencies between UC 322's

grand jury testimony and his deposition testimony.  Defs. Reply Br. at 6.

Defendants assert further that UC 322 did not omit material information but

merely presented his observations to the grand jury "that he gave Winley money,

saw Winley walk up to plaintiff and two other individuals, saw all four individuals huddle, saw some brief exchange, and saw Winley return minutes later with two Ziploc bags of crack cocaine."  Defs. Reply Br. at 6-7.

The court concludes that plaintiff's reliance on alleged omissions from UC 322's grand jury testimony to rebut the presumption of probable cause fails because such omissions do not amount to "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."[16]

Plaintiff's assertion that there are inconsistencies between UC 322's grand jury testimony and his deposition testimony in the instant matter is not correct. UC 322's deposition testimony in this matter is consistent with his statements before the grand jury.

Before the grand jury, UC 322 testified to the following:

> [Mr. Roland] was very distinct because he had a black snorkel coat with fur on it.  At that time Mr. Winley told me to give him the money, I then handed him $40.  I saw Mr. Winley go to Mr. Roland, there was [sic] also

---

[16] At oral argument, defendants argued for the first time that UC 322 is entitled to absolute immunity for his testimony before the grand jury.  Oral Arg. Tr. at 19:21-20:13; *see Rehberg v. Paulk*, 566 U.S. 356, 375 (2012) (holding that a grand jury witness is entitled to absolute immunity from any § 1983 claim based on the witness's testimony).  District courts in this Circuit have applied *Rehberg* also to preclude plaintiffs from relying on defendants' grand jury testimony to rebut the presumption of probable cause created by a grand jury indictment.  *See, e.g.*, *Bonds v. City of New York*, No. 12-CV-1772, 2014 WL 2440542, at *7 (E.D.N.Y. May 30, 2014).  However, "absolute immunity is an affirmative defense."  *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005).  "Failure to assert an affirmative defense, including absolute immunity, in an answer or other responsive pleading results in waiver of that defense."  *Carroll v. Trump*, 680 F. Supp. 3d 491, 499 (S.D.N.Y. 2023).  In this case, whether defendants have waived the defense of absolute immunity is immaterial because plaintiff's reliance on alleged omissions from UC 322's grand jury testimony to establish his malicious prosecution claim and fair trial claim fails on the merits.

> two other individuals.  They huddled up by a gate down the block.  There
> was a brief exchange, and Mr. Winley returned to me, handing me two
> zips of crack cocaine.  I stayed at the location and watched Mr. Roland
> later be apprehended by my field team, while my partner stayed with
> Mr. Winley until he was apprehended.

UC 322 Grand Jury Test. at 5:4-16.

The court observes that UC 322 did identify plaintiff to the grand jury
specifically by singling plaintiff out and mentioning his distinctive coat.  However,
describing for the grand jury the distinctive appearance of a criminal defendant in a
narcotics transaction is well within the authority of law enforcement and is not
"police conduct undertaken in bad faith."  *Savino*, 331 F.3d at 69 (citation omitted).
Further, at no point in UC 322's grand jury testimony did UC 322 state that he had
observed plaintiff exchange crack cocaine with Winley.  UC 322 Grand Jury Test. at
5:4-16.  Instead, UC 322 described for the grand jury that he observed Winley go to
plaintiff, who was with "two other individuals," and that the four individuals
"huddled up by a gate."  *Id.*  Those four individuals — one of whom was plaintiff —
had "a brief exchange" before Winley returned to UC 322 with the crack cocaine.  *Id.*

Similar to his grand jury testimony, UC 322 in his deposition testified to the
following:

> I saw that there was an exchange between Mr. Winley and what was
> one of the individuals located within the three members of the group . .
> .  I saw that there was an exchange of an item at a distance from Mr.
> Winley to the other individuals. . . .  I cannot express what item was
> specifically exchanged.  I saw there was an exchange of an item . . . .  I
> am stating that among the three individuals, Mr. Roland was one of
> them. . . .  Members of my field team were communicated to apprehend
> all of the individuals that Mr. Winley had inaction [sic] with.

UC 322 Dep. at 16:6-23, 34:17-23.

As these passages illustrate, in UC 322's grand jury testimony and in his deposition testimony, UC 322 described that he observed Winley approach three men — one of whom was plaintiff — and exchange an item with one of the three men before returning to UC 322 with crack cocaine.

In addition, that UC 322 did not state expressly before the grand jury that UC 322 could not identify exactly which of the three men exchanged the item with Winley does not amount to "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (quoting *Colon*, 60 N.Y.2d at 83, 455 N.E.2d at 1251); *see also United States v. Del Villar*, 20-CR-295, 2021 WL 4312060, at *11 (S.D.N.Y. Sept. 22, 2021) (noting that "law enforcement is not required personally to witness a drug transaction in order to establish probable cause" because "circumstantial evidence is sufficient").  Prosecution "was under no duty to present every item of arguably exculpatory evidence in seeking an indictment." *Savino*, 331 F.3d 63 at 75 (stating that the prosecution's decision not to present arguably exculpatory information to a grand jury "[did] not amount to conduct undertaken in bad faith" sufficient to overcome the presumption of probable cause created by the indictment).

Courts in this Circuit have held that a police officer's failure to disclose allegedly exculpatory information is sufficient to rebut the presumption of probable cause "only when [the officer] fail[s] to disclose evidence that would 'conclusively' establish the plaintiff's innocence or 'negate the possibility that the plaintiff had

committed the crime.'" *King v. City of New York*, No. 12-CV-2344, 2014 WL
4954621, at *5 (E.D.N.Y. Sept. 30, 2014) (first quoting *Gisondi v. Town of Harrison*,
72 N.Y.2d 280, 528 N.E.2d 157, 161 (N.Y. 1998) and then quoting *Bonds*, 2014 WL
2440542, at *8).

    For example, in *Bonds*, plaintiff was arrested and prosecuted for a weapons
charge arising out of his alleged involvement in a shooting.  2014 WL 2440542, at
*8.  Plaintiff noted that the arresting police officer failed to disclose in his grand
jury testimony two pieces of exculpatory evidence: (1) a 911 call in which the caller's
description of the shooter's clothing did not match plaintiff's clothing; and (2) the
statement of an eyewitness at the scene of the shooting who could not identify with
certainty plaintiff as the shooter.  *Id.*  The court concluded that the officer's decision
not to disclose this information to the grand jury did not rebut the presumption of
probable cause.  *Id.*  According to the court, "[t]he fact that a description of one
particular individual did not match plaintiff, or the fact that an eyewitness did not
identify plaintiff, would not necessarily rule out plaintiff's involvement in the
shooting." *Id.*  Because police are "under no duty to present every item of arguably
exculpatory information," *Id.* (citing *Savino*, 331 F.3d at 75), and the information
withheld "'[did] not negate the possibility' that plaintiff had committed the crime,"
plaintiff had failed to rebut the presumption of probable cause.  *Id.* (citing *Williams
v. City of New York*, No. 02 Civ. 3693, 2003 WL 22434151, at *7 (S.D.N.Y. Oct. 23,
2003)).

Similarly, the information that UC 322 did not provide to the grand jury —
that he could not identify which of the three individuals exchanged something with
Winley or the identity of the item that was exchanged — "would not necessarily rule
out plaintiff's involvement" in the drug transaction. *Id.* As a consequence, plaintiff
cannot rebut the presumption of probable cause on the basis of UC 322's
withholding of this information from his grand jury testimony.

Accordingly, plaintiff's reliance on UC 322's grand jury testimony to rebut the
presumption in favor of probable cause fails.

### b.   The criminal complaint

The court examines next plaintiff's assertion that Detective Rios included
fabricated factual allegations in the criminal complaint. Pl. Br. at 16. Plaintiff
alleges that Detective Rios "fabricated allegations contained within the complaint
because they rely on UC 322 whose testimony conflicts with the complaint." *Id.*
The court understands plaintiff to mean in his briefing that inconsistencies between
the factual allegations in the criminal complaint and UC 322's deposition testimony
demonstrate that defendant Detective Rios fabricated allegations within the
criminal complaint. *Id.* at 16, 19. Plaintiff's position appears to be that the
criminal complaint contains exaggerated or fabricated allegations that UC 322
observed plaintiff exchange an item with Winley. *Id.* In addition, plaintiff asserts
in his briefing that the criminal complaint's factual allegation that the PRBM was
recovered from plaintiff's person was fabricated because, according to plaintiff,
defendants either planted the PRBM or fabricated the recovery from plaintiff of the

PRBM.  *Id.* at 7.  Finally, at oral argument, plaintiff argued that defendants fabricated UC 322's observations of plaintiff's alleged participation in the narcotics transaction.  Oral Arg. Tr. at 21:12-24:24.

Defendants respond that the "criminal complaint does *not* state that plaintiff gave something to Winley in exchange for money." Defs. Reply Br. at 8. Defendants argue that "[w]hether plaintiff did, in fact, give Winley anything in exchange for money, or whether UC 322 observed this exchange, is simply immaterial because his prosecution was not premised on this fact." *Id.*  As to plaintiff's allegation that defendants planted the PRBM on plaintiff's person, defendants note that the allegation is supported only by plaintiff's own testimony. *Id.* at 5.  According to defendants, "[s]uch rank speculation cannot create a genuine dispute of material fact." *Id.* (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).  Defendants contend further that "plaintiff has failed to show that any evidence was fabricated during his prosecution." *Id.* at 8.

The court concludes that the factual allegations within the criminal complaint do not rebut the presumption of probable cause.

"Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome." *Manganiello*, 612 F.3d at 149 (citation omitted).

Here, there is no indication in the criminal complaint that defendants lied to secure the indictment. There is no inconsistency between UC 322's deposition testimony and the allegations in the criminal complaint. Moreover, the criminal complaint does not contain fabricated factual allegations that UC 322 observed plaintiff receive funds from Winley. The criminal complaint stated that UC 322 "purchased crack-cocaine from Defendants JEROME WINLEY and GERALD ROLAND, *who acted in concert to sell crack-cocaine*." Criminal Compl. at 1 (emphasis supplied). The criminal complaint stated further:

> [UC 322] observed WINLEY walk . . . towards ROLAND and two separately charged individuals . . . and engage them in conversation. . .. [UC 322] observed all four individuals walk towards a gate between two buildings on West 114th Street and engage in further conversation. A short time later, WINLEY returned [to UC 322] . . . [and] handed [UC 322] two (2) small Ziploc bags containing crack-cocaine.

*Id.* at 2.

As with UC 322's deposition testimony, the criminal complaint reflects accurately UC 322's observations that Winley approached plaintiff and the two other individuals, "engage[d] them in conversation," and returned to UC 322 with two Ziploc bags of crack-cocaine. *Id.* Plaintiff has failed to identify for the court any inconsistency between UC 322's deposition testimony and the facts recounted in the criminal complaint.

Finally, plaintiff insists that no PRBM was recovered from his person and that "to the extent any pre-recorded buy money was attributed to plaintiff," it must have been planted. Pl. Resp. Defs. Stmt. Facts ¶ 10; *see also* Pl. Br. at 7. Further, at oral argument, plaintiff's counsel asserted that each factual allegation included

in the criminal complaint was fabricated by defendants, including UC 322's
observations of plaintiff interacting with Winley.  Oral Arg. Tr. at 21:12-24:24.
Plaintiff contended that decisions of the Second Circuit establish that a § 1983
plaintiff's testimony is sufficient to withstand a motion for summary judgment.  *Id.*
at 33:16-34:25 (citing *Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019)); *see
also Rentas v. Ruffin*, 816 F.3d 214 (2d Cir. 2016); *Adamson v. Miller*, 808 F. App'x
14 (2d Cir. 2020).  Plaintiff maintained on this basis that he has rebutted the
presumption of probable cause created by the grand jury indictment because —
according to plaintiff — he disputed in his deposition testimony each factual
allegation contained within the complaint.  Oral Arg. Tr. at 31:20-23, 33:4-20.

     The court concludes that plaintiff — using the argument that defendants
fabricated the allegations contained in the criminal complaint — has failed to rebut
the presumption of probable cause.  The presumption of probable cause "may only
be rebutted by evidence that the indictment was procured 'by fraud, perjury, the
suppression of evidence or other police conduct undertaken in bad faith.'"  *Savino*,
331 F.3d at 73 (citing *Colon*, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456).  However, on
the record before the court, no reasonable juror "would undertake the suspension of
disbelief necessary to give credit to" plaintiff's allegations.  *Jeffreys v. City of New
York*, 426 F.3d 549, 555 (2d Cir. 2005).

     On a motion for summary judgment, the court "should not weigh evidence or
assess the credibility of witnesses."  *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619

(2d Cir. 1996) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)).

However, the Second Circuit recognizes:

> [W]here the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys*, 426 F.3d at 554 (citation omitted).

In *Jeffreys*, the court granted defendants' motion for summary judgment and concluded that plaintiff's deposition testimony could not establish a *genuine* issue of material fact. *Id.* at 555. There, the court held that "where [there is] nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony" and "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [plaintiff's complaint]," the court may grant defendants' motion for summary judgment. *Id.*

In *Bellamy*, the case on which plaintiff relies, the Second Circuit set aside the district court's decision to grant defendants' motion for summary judgment. 914 F.3d at 746-47. There, plaintiff was prosecuted and convicted based in part on an inculpatory statement that plaintiff allegedly made and that was overheard by a defendant police officer. *Id.* at 745-46. After plaintiff's conviction was vacated, he brought a § 1983 action and alleged that the police officer fabricated the statement. *Id.* at 741-42. The district court granted defendants' motion for summary judgment because "plaintiff's claims [were] 'unsubstantiated by any other direct evidence.'" *Bellamy v. City of New York*, 12 Civ. 1025, 2017 WL 2189528, at *35 (E.D.N.Y. May

17, 2017) (citing *Jeffreys*, 426 F.3d at 555), *aff'd in part, vacated in part, remanded*,
914 F.3d 727 (2d Cir. 2019).  The Second Circuit vacated the judgment of the
district court and stated that "a § 1983 plaintiff's testimony alone may be
independently sufficient to raise a genuine issue of material fact."  *Bellamy*, 914
F.3d at 746 (citing *Rentas*, 816 F.3d at 221).  There, the Second Circuit determined
that *Jeffreys* was inapposite because, in *Bellamy*, "[plaintiff's] testimony was
consistent and uncomplicated: he never made the statement."  *Id.*  By contrast, in
*Jeffreys*, plaintiff's testimony was "so replete with inconsistencies" that the
testimony alone could not give rise to a *genuine* dispute of material fact.  426 F.3d
at 555.

Here, plaintiff relies exclusively on his deposition testimony to establish that
defendants fabricated (1) UC 322's observations of plaintiff's participation in the
narcotics transaction, Oral Arg. Tr. 22:20-23:20; and (2) defendants' recovery of the
PRBM from plaintiff's pocket.  Pl. Stmt. Facts ¶ 5.  Unlike the testimony in
*Bellamy*, plaintiff's testimony is contradictory, inconsistent and incomplete on
matters core to his allegations of fabrication.  For example, in responding to
questions about the PRBM, plaintiff denied initially that any PRBM was ever
recovered from him.  Pl. Dep. at 45:6-14.  Then, when shown the property invoice
from his arrest indicating that the $40 in PRBM was recovered from his person,
plaintiff admitted that the PRBM *was* recovered from him.  *Id.* at 48:13-49:9, 50:2-
14, 63:3-5.  However, later in the same deposition, plaintiff suggested that the
PRBM was planted.  *Id.* at 72:18-25 ("My testimony is maybe [the officers] put it

there, I am going to leave it at that."). But even then, plaintiff acknowledged that he did not see any officer place the PRBM in his pocket.[17]  *Id.* at 73:4-5, 73:24-74:1.

Moreover, in his briefing, in his statement of facts and in his response to defendants' statement of facts, plaintiff plainly concedes that UC 322 observed plaintiff interacting with Winley on the evening of his arrest.  Pl. Br. at 7 (stating that UC 322 "observed [Winley] 'interacting' with three individuals including Plaintiff"); Pl. Stmt. Facts ¶ 4 ("Defendant UC 322 only saw Mr. Roland 'interacting' with Mr. Winley . . . ."); Pl. Resp. Defs. Stmt. Facts ¶ 2. Then, only at oral argument did plaintiff's counsel assert that defendants fabricated also this allegation, relying on plaintiff's deposition in which plaintiff said he was not walking with Winley and does not know a person by that name.  Oral Arg. Tr. at 9:10-10:1, 11:6-10; Pl. Dep. at 29:16-17, 51:19-20, 53:11-14; *see Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 105-06 (2d Cir. 2011) (citing *Jeffreys* and holding that plaintiff failed to raise a *genuine* dispute of material fact due to inconsistencies between plaintiff's sworn testimony and her motion papers); *Fuentas v. Schemmer*, 18-CV-08207, 2023 WL 188739, at *6 (S.D.N.Y. Jan. 13, 2023) (citing *Jeffreys* and stating that contradictions between plaintiff's deposition testimony and

---

[17] In the deposition of Detective Rios, taken the day after plaintiff's own deposition, the detective explained that he recovered a sum of money from plaintiff's pocket while searching plaintiff, and that he later determined that the serial numbers of two twenty-dollar bills recovered from plaintiff matched the serial numbers of the PRBM that UC 322 gave to Winley.  Rios Dep. at 48:13-23, 55:9-20. The court notes that, when presented with the opportunity to question Detective Rios about the authenticity of the PRBM in light of plaintiff's deposition testimony, plaintiff's counsel declined to probe Detective Rios's account.  *See generally* Rios Dep.

parties' joint statement of facts "render Plaintiff's testimony so problematic that no
reasonable juror could possibly find in his favor").  In addition, plaintiff
acknowledged in his deposition that he *was* walking with the two separately
charged individuals on the evening of his arrest, consistent with the observations of
UC 322.[18]  Pl. Dep. at 28:19-29:20, 30:3-15, 51:8-13, 75:9-24.  However, he denied
walking with or knowing Winley.  *Id.* at 51:19-20, 53:11-14, 59:8-10.  Plaintiff did
not offer an explanation of how UC 322 could be correct in his observations of
plaintiff walking with the two other individuals while also intentionally falsifying
his observations of plaintiff interacting with Winley.  As in *Jeffreys*, there is
"nothing in the record to support plaintiff's allegations other than plaintiff's own
contradictory and incomplete testimony."  *Jeffreys*, 426 F.3d at 555.  As a result, the
court concludes that "no reasonable juror would undertake the suspension of
disbelief necessary to credit the allegations made in [plaintiff's] complaint."  *Id.*

In sum, plaintiff — using the argument that defendants fabricated the
allegations contained in the criminal complaint — has failed to rebut the
presumption of probable cause.

---

[18] Plaintiff's counsel indicated at oral argument that plaintiff "says that he was not
speaking with any of those individuals."  Oral Arg. Tr. at 23:19-20.  Counsel stated
further that plaintiff "maintains that he was not gathering with anyone."  *Id.* at
24:1-4.  However, counsel's assertions are not accurate, as plaintiff stated multiple
times in his deposition that he was with the two separately charged individuals on
the evening of his arrest.  *See, e.g.*, Pl. Dep. at 29:18-22.

### c.   UC 322's post-arrest statements

The court considers next plaintiff's allegation that UC 322 "falsely communicated" to Detectives Rios and Mero that he observed plaintiff exchange funds with Winley.  Pl. Br. at 14.

Plaintiff asserts that UC 322 "fabricated to Defendants Rios and Mero about the alleged exchange of narcotics for prerecorded money between Plaintiff and [Winley]."  *Id.* at 17.  Plaintiff fails to cite any material in the record for this assertion.  *Id.*  However, at oral argument, plaintiff's counsel clarified that plaintiff is relying on Detective Rios' suppression hearing testimony to establish that defendants fabricated that UC 322 observed plaintiff exchange funds with Winley.  Oral Arg. Tr. at 39:9-17.  Defendants dispute any fabrication and argue that the point "is simply immaterial because his prosecution was not premised on this fact."  Defs. Reply Br. at 8.

Contrary to defendants' assertion, Detective Rios testified during the suppression hearing that UC 322 told the detective following the arrest of plaintiff that UC 322 identified plaintiff specifically as the individual who received funds from Winley during the drug sale.  Suppression Tr. at 13:1-18, 43:3-9, 48:1-25.  However, UC 322 did not testify to that fact before the grand jury, as detailed above.  UC 322 Grand Jury Test. at 5:4-16.  In addition, UC 322 stated in his deposition in the instant case that he was unable to identify which of the three individuals had exchanged items with Winley.  UC 322 Dep. at 16:8-12.  As a result, Detective Rios' statements during the suppression hearing recounting UC 322's

purported observations appear inconsistent with UC 322's own statements both before and after the suppression hearing.

However, even assuming that defendant UC 322's purported statement to Detective Rios could be considered a fabrication, there is no indication that the statement supported plaintiff's indictment, or that the statement tainted prosecutors' decision to prosecute plaintiff.  The presumption in favor of probable cause "may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Rothstein v. Carriere*, 373 F.3d 275, 283 (quoting *Colon*, 60 N.Y.2d at 82, N.Y.S.2d at 455).  "[T]he plaintiff's avenue for rebuttal is not limited to proof of misconduct in the grand jury alone. Rather, the plaintiff may show that the officer misrepresented the facts to the District Attorney or otherwise acted in bad faith *in a way that led to the indictment*." *Manganiello v. Agostini*, No. 07 Civ. 3644, 2008 WL 5159776, at *5 (S.D.N.Y. Dec. 9, 2008), *aff'd*, 612 F.3d 149 (2d Cir. 2010) (emphasis supplied).

Plaintiff has submitted to the record minutes from UC 322's grand jury testimony in which UC 322 responds to questions about plaintiff's arrest.  *See* UC 322 Grand Jury Test.  However, as noted above, UC 322 did not testify before the grand jury that he had observed plaintiff specifically receive funds from Winley. *See generally id.*  And, plaintiff has adduced no evidence — such as in the criminal complaint, in an arrest report or in an affidavit — that indicates that prosecutors

considered UC 322's purported observation in evaluating the strengths of the case

or that the grand jury considered UC 322's observation in a way that led to the

indictment.  *See, e.g.*, *Taylor v. City of New York*, 19 Civ. 6754, 2022 WL 744037, at

*14-15 (S.D.N.Y. Mar. 11, 2022) (denying defendants' motion to dismiss a malicious

prosecution claim because inconsistency between the criminal complaint and a

defendant's deposition testimony rebutted the presumption of probable cause

created by indictment); *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 628-29

(S.D.N.Y. 2015) (holding that a defendant's alleged fabrication was "irrelevant to

the claim for malicious prosecution" because it was never presented to the grand

jury); *Felmine v. City of New York*, No. 09-CV-3768, 2011 WL 4543268, at *12

(E.D.N.Y. Sept. 29, 2011) ("[W]here the grand jury indictment is procured without

any involvement of the alleged falsehoods, those falsehoods cannot be considered a

proximate cause of the resulting prosecution.").  To the contrary, the record

indicates that the prosecution did not rely on such information in deciding whether

there was probable cause to indict plaintiff.  *See* Criminal Compl. at 1-2.  Instead,

the record indicates that plaintiff's indictment relied primarily on: (1) UC 322's

observations of Winley *interacting* with plaintiff prior to Winley's returning with the

crack cocaine, *see* Criminal Compl. at 2; UC 322 Grand Jury Test. at 5:8-13; and (2)

the recovery of the PRBM from plaintiff's person at the time of his arrest, *see*

Criminal Compl. at 2.  Plaintiff "may not rely on conclusory allegations or

unsubstantiated speculation" to withstand defendants' motion for summary

judgment.  *Almenas*, 143 F.3d at 114 (citations omitted).  Because there is no

indication that UC 322's alleged statement to Rios contributed to plaintiff's

indictment, plaintiff fails to rebut the presumption of probable cause on this basis.

   In sum, the court concludes that plaintiff has failed to establish a genuine

dispute of material fact "that the indictment was procured by 'fraud, perjury, the

suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*,

331 F.3d at 72 (citation omitted).  As a consequence, the court grants defendants'

motion for summary judgment as to plaintiff's malicious prosecution claim.

### B.   Denial of the right to a fair trial claim

   The court addresses next whether plaintiff has established a genuine dispute

of material fact that defendants violated plaintiff's constitutional right to a fair

trial.  Plaintiff alleges that defendants "knowingly and intentionally conveyed false,

fabricated, misleading, or incomplete information to the District Attorney's Office."

Compl. ¶ 27.

### 1.   Legal framework

   "The Due Process Clause guarantees a criminal defendant's 'right to a fair

trial.'" *Frost v. New York Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020) (citation

omitted); *Smalls v. Collins*, 10 F.4th 117, 142 (2d Cir. 2021) ("In contrast to a

malicious-prosecution claim, which focuses on the validity of the initiation of the

prosecution, a section 1983 fair-trial claim predicated on fabricated evidence guards

against the deprivation of life, liberty, or property as a result of the corruption of

due process . . . .").

A person is deprived of the constitutional right to a fair trial "if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)).

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

To establish fabrication, plaintiff must show that "defendant[s] knowingly [made] a false statement or omission." *Ashley v. City of New York*, 992 F.3d 128, 143 (2d Cir. 2021) (citing *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015)); *see Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277-79 (2d Cir. 2016) (holding that the plaintiff's and the officer's conflicting accounts of the events underlying the charges created an issue of fact as to falsity). Moreover, a plaintiff "may sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor." *Garnett*, 838 F.3d at 274.

Whether the fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's

case. *Loftin v. City of New York*, 15-CV-5656, 2017 WL 3614437, at *8 (E.D.N.Y.

Aug. 21, 2017) (citing *Garnett*, 838 F.3d at 277). Fabricated evidence is material

when it may affect "the prosecutor's decision to pursue charges rather than to

dismiss the complaint without further action" or when it could influence "the

prosecutor's . . . assessments of the strength of the case." *Garnett*, 838 F.3d at 277.

Importantly, this inquiry "does not turn on whether the fabricated evidence is in

fact *used* during a trial; it focuses rather on whether the fabricated evidence, if

introduced during trial, could be expected to influence the jury's decision-making

process." *Ekukpe v. Santiago*, 823 F. App'x 25, 31 (2d Cir. 2020) (summary order).

A plaintiff can establish that officers forwarded the fabricated information to

prosecutors through direct evidence that officers gave the information to

prosecutors or by other evidence from which it can be inferred that the officers

forwarded that information to prosecutors. *Haskins v. City of New York*, 15-CV-

2016, 2017 WL 3669612, at *11 (E.D.N.Y. Aug. 24, 2017); *see Morse*, 804 F.3d at 547

(holding that plaintiff had shown that the fabricated evidence was forwarded to

prosecutors because prosecutors used the fabricated evidence during grand jury

proceedings).

"[A] [p]laintiff can establish a depravation [sic] of liberty through the number

of court appearances a plaintiff made post-arraignment, constraints such as bail

requirements, a period of incarceration or travel restrictions." *Loftin*, 2017 WL

3614437, at *8 (citing *Singer*, 63 F.3d at 117); *Barnes v. City of New York*, 68 F.4th

123, 129-30 (2d Cir. 2023) ("The use of fabricated evidence in initiating a

prosecution . . . may amount to a deprivation of liberty even in the absence of a conviction based on the fabricated evidence . . . .").

However, plaintiff is required to show also "a *causal connection* between the fabrication and the deprivation." *Snead v. City of New York*, 463 F. Supp. 3d 386, 395 (S.D.N.Y. 2020). This may be satisfied where a plaintiff has shown that he would not have been charged with a particular crime absent the fabrication, *see, e.g.*, *Ricciuti*, 124 F.3d at 126-27, or where the fabrication results in a longer period of detention. *See, e.g.*, *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 394 (E.D.N.Y. 2013).

In addition, and unlike a malicious prosecution claim, "a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff." *Garnett*, 838 F.3d at 277-78.

### 2. Analysis

The court turns next to plaintiff's fair trial claim.

To support his fair trial claim, plaintiff relies on the same evidence on which he relies to support his malicious prosecution claim: (1) UC 322's allegedly fabricated grand jury testimony; (2) the criminal complaint signed by Detective Rios that plaintiff alleges contained fabricated information; and (3) the allegedly fabricated statements of UC 322 to Detectives Rios and Mero. Because a claim for malicious prosecution and a claim for deprivation of the right to fair trial address different rights, and therefore have different standards, the court considers anew

these arguments in the context of plaintiff's fair trial claim. *See Barnes*, 68 F.4th at

129. The court addresses each argument in turn.

### a.   UC 322's grand jury testimony

The court addresses first plaintiff's argument that UC 322 fabricated

evidence in his grand jury testimony. Plaintiff asserts that (1) UC 322's grand jury

testimony is inconsistent with his deposition testimony and (2) UC 322's failure to

state expressly in his grand jury testimony that he could not identify which of the

three individuals exchanged the unidentified items with Winley amounts to a "lie[]

under oath." Pl. Br. at 16-17. According to plaintiff, UC 322's grand jury testimony

gives rise to a triable issue of fact on his fair trial claim. *Id.*

Defendants assert that UC 322's grand jury testimony is consistent with his

deposition testimony. Defs. Reply Br. at 6. Defendants argue further that UC 322

did not omit material information but merely recounted for the grand jury his

observations on the evening in question. Defs. Reply Br. at 6-7.

The court concludes that plaintiff's reliance on UC 322's grand jury testimony

to establish his fair trial claim fails. A person is deprived of the constitutional right

to a fair trial "if an (1) investigating official (2) fabricates evidence (3) that is likely

to influence a jury's decision, (4) forwards that information to prosecutors, and (5)

the plaintiff suffers a deprivation of liberty as a result." *Jovanovic*, 486 F. App'x at

152.

First, plaintiff's contention that there are inconsistencies between UC 322's

grand jury testimony and his deposition in the instant matter — and that such

inconsistencies indicate that UC 322 fabricated statements to the grand jury — is not accurate. *See supra* Section III.A.2.a. The court has concluded that UC 322's grand jury testimony is consistent with his deposition testimony. *Id.* Further, UC 322 was under no obligation to state expressly to the grand jury that he could not identify which of the three individuals exchanged the unidentified item with Winley. *Id.*; *see also Anilao v. Spota*, 27 F.4th 855, 871 n.12 (2d Cir. 2022) (denying fair trial claim based on the withholding from grand jury of allegedly exculpatory evidence because "the reality is that a prosecutor in New York usually has no obligation to present to the grand jury evidence that is exculpatory"). Because plaintiff has failed to raise a triable issue of fact that UC 322 fabricated evidence in his grand jury testimony, plaintiff's fair trial claim on this basis fails.

### b.    The criminal complaint

The court considers next whether plaintiff has established a genuine issue of fact that defendants fabricated allegations in the criminal complaint. Plaintiff asserts that "the record suggests that Defendant Rios fabricated allegations contained within the complaint because they rely on UC 322 whose testimony conflicts with the complaint." Pl. Br. at 16. At oral argument, plaintiff clarified his position that each factual allegation contained with the criminal complaint was

fabricated by either UC 322 or Detective Rios.[19]  Oral Arg. Tr. at 22:1-24:24, 29:3-8.

Plaintiff alleges further that defendants either planted the PRBM on his person, Pl.

Br. at 7, or fabricated that the PRBM was recovered from plaintiff.  Oral Arg. Tr. at

39:3-5.  Plaintiff maintained at oral argument that his own deposition testimony is

sufficient to establish a genuine issue of fact that defendants fabricated UC 322's

observations and the recovery of the PRBM.  *Id.* at 33:19-36:22.

Defendants state that the factual allegations in the criminal complaint reflect

accurately UC 322's observations of the alleged narcotics transaction and that there

is no evidence that any defendant fabricated any of the allegations contained within

the criminal complaint.  Defs. Reply Br. at 6-7, 8.

As noted above, plaintiff's assertion that there are inconsistencies between

the factual allegations in the criminal complaint and UC 322's deposition testimony,

and that these inconsistencies establish a triable issue of fact that defendants

fabricated evidence, is not supported.  The criminal complaint stated only that UC

---

[19] During oral argument, defendants' counsel remarked that plaintiff's fabrication argument at oral argument was "completely at odds with what [plaintiff] asserted in the briefing."  Oral Arg. Tr. at 25:9-11.  Indeed, in plaintiff's briefing and in his statement of facts, plaintiff does not dispute that UC 322 observed plaintiff interacting with Winley and the two other unidentified parties during the night in question.  *See* Pl. Stmt. Facts ¶ 4; Pl. Resp. Defs. Stmt. Facts ¶ 2 (declining to dispute that UC 322 observed Winley "approach and speak with three individuals, one of whom . . . was plaintiff Gerald Roland"); Pl. Br. at 7 ("[UC 322] then observed [Winley] 'interacting' with three individuals including Plaintiff.  Plaintiff did not exchange anything with the non-party.").  However, plaintiff denies in his deposition that he interacted with Winley on the evening of his arrest.  *See* Pl. Dep. at 51:19-20, 53:11-14, 59:8-10.  As the court has noted, plaintiff offers inconsistent and contradictory accounts of the evening of his arrest, and the court has concluded, as a result, that no reasonable juror would credit the allegations made in his complaint.

322 observed Winley approach plaintiff and two nonparties and "engage them in

conversation" before returning to UC 322 with two Ziploc bags of crack-cocaine.

Criminal Compl. at 2.  Notably absent from the criminal complaint is any assertion

that UC 322 observed plaintiff exchange any item with Winley.  *Id.*  Similarly, in

UC 322's deposition testimony, UC 322 stated that he observed Winley approach

the three men and that "there was an exchange between Mr. Winley and . . . one of

the individuals located within the three members of the group."  UC 322 Dep. at

16:6-23, 34:17-23.  Accordingly, there is no indication in UC 322's deposition

testimony that defendants included fabricated factual allegations in the criminal

complaint.

Further, as with his malicious prosecution claim, *supra* Section III.A.2.b,

plaintiff's testimony in the instant matter is so contradictory, inconsistent and

incomplete that "no reasonable juror would undertake the suspension of disbelief

necessary to credit the allegations made in his complaint."  *Jeffreys*, 426 F.3d at

555.  The court concludes, as a result, that plaintiff has failed to establish a genuine

issue of material fact that defendants fabricated the allegations in the criminal

complaint.

### c.   UC 322's post-arrest statements

The court turns next to plaintiff's allegation that UC 322 "falsely

communicated" to Detectives Rios and Mero that he observed plaintiff exchange

funds with Winley.  Pl. Br. at 14.

Plaintiff asserts that UC 322 "fabricated to Defendants Rios and Mero about the alleged exchange of narcotics for prerecorded money between Plaintiff and [Winley]." Pl. Br. at 17. At oral argument, plaintiff asserted that defendants fabricated that UC 322 observed plaintiff exchange funds with Winley. Oral Arg. Tr. at 39:9-17. Plaintiff contended that this alleged fabrication resulted in plaintiff's prosecution. *Id.* at 41:13-16.

Defendants deny that UC 322 ever made such a statement, and that, even if he did, the alleged statement is "simply immaterial because [plaintiff's] prosecution was not premised on this fact." Defs. Reply Br. at 8.

The court concludes that plaintiff's reliance on UC 322's allegedly "false[] communicat[ion]" to support his fair trial claim fails because there is no indication that any defendant forwarded the allegedly false communication to prosecutors or that the communication caused plaintiff's deprivation of liberty. Pl. Br. at 14, 17.

"Proof that a police officer forwarded the fabricated evidence to a prosecutor can be satisfied by direct evidence that the officer gave the evidence to the prosecutor or by other evidence from which it can be inferred that the officer forwarded the fabricated evidence to a prosecutor." *Haskins v. Jackson*, 15-CV-2016, 2020 WL 6705640, at *13 (E.D.N.Y. Nov. 10, 2020) (citing *Morse*, 804 F.3d at 547); *Garnett*, 838 F.3d at 280 ("[T]o succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must prove by a preponderance of the evidence that the officer . . . forwarded the false information to prosecutors."); *Reen v. City of New*

*York*, 16-CV-3347, 2018 WL 4608194, at *11 (E.D.N.Y. Sept. 25, 2018) (holding that

there was evidence that a defendant police officer forwarded the fabricated

information to prosecutors because the information was included in the criminal

complaint); *Burgess v. City of New York*, 15-CV-5525, 2018 WL 1581971, at *5

(E.D.N.Y. Mar. 29, 2018) (finding a triable issue of fact on plaintiff's fair trial claim

because defendants filed an arrest report and criminal complaint that contained the

allegedly fabricated information).  Here, plaintiff has raised no evidence showing

that Detective Rios or UC 322 forwarded the allegedly fabricated information to

prosecutors.  Other than Detective Rios' statements in the suppression hearing —

which was held 10 months after plaintiff was indicted — the record is devoid of any

evidence of UC 322's alleged statement to Detective Rios concerning the specific

participation of plaintiff in the transaction.

Moreover, there is no indication that the alleged fabrication caused plaintiff's

deprivation of liberty because the allegedly fabricated evidence was not relied upon

before the grand jury or in the criminal complaint.[20]  Courts have found the

causation requirement of a fair trial claim satisfied where a plaintiff has shown that

---

[20] Here, the court notes that the correct causation inquiry is one of *proximate* cause
and that the existence of probable cause to prosecute plaintiff independent of the
allegedly fabricated evidence is not a defense to a fair trial claim.  *See Hoyos v. City
of New York*, 650 F. App'x 801, 803 (2d Cir. 2016) (summary order) ("[Plaintiff]
is correct that the type of causation at issue in a fabrication of evidence claim is
proximate cause, rather than probable cause."); *see also Tolentino v. City of Yonkers*,
15 CV 5894, 2017 WL 4402570, at *5 (S.D.N.Y. Oct. 2, 2017) (stating that in a §
1983 action the court "must consider the 'foreseeability or the scope of the risk
created by the predicate conduct' and whether there was 'some direct relation
between the injury asserted and the injurious conduct alleged'" (quoting *City of Los
Angeles v. Mendez*, 137 S. Ct. 1539, 1548-49 (2017))).

he would not have been charged with a particular crime absent the fabrication.  *See Ricciuti*, 124 F.3d at 126-27; *see also Torres v. City of New York*, 16 Civ. 6719, 2017 WL 4325822, at *6 (E.D.N.Y. Sept. 27, 2017) (finding a lack of causation because "nothing in the criminal complaint . . . supports even an inference that" the fabrication "factored into [prosecutors'] decision to bring charges"); *Loftin*, 2017 WL 3614437, at *9 ("[B]ecause the information provided by the officers was the basis for the charges against Plaintiff, the officers' statements influenced the decision of the District Attorney's Office to charge Plaintiff in the Criminal Complaint."); *Fowler-Washington v. City of New York*, 19-CV-6590, 2023 WL 2390538, at *9 (E.D.N.Y. Mar. 7, 2023) ("If fabricated evidence is the basis of the charges brought against an individual, a jury could reasonably conclude that this evidence caused the prosecutor to pursue charges.").

        Here, the record indicates that plaintiff's prosecution was not premised on any observations of plaintiff exchanging items with Winley during the transaction. For example, the criminal complaint, which was filed the day after plaintiff's arrest, did not include the factual allegation that UC 322 observed plaintiff receive funds from Winley.  *See* Criminal Compl.; *see also Smalls*, 10 F.4th at 142 n.11 ("[O]ur precedents limit [plaintiff's] claim to one that seeks redress for 'deprivation[s] of life, liberty, or property' that occurred 'as a result' of an investigating official's 'forward[ing fabricated] information to prosecutors.'").  Therefore, in the absence of material in the record indicating that defendants forwarded the allegedly fabricated statements of UC 322 to prosecutors, and that such information caused the

deprivation of plaintiff's liberty, plaintiff has failed to make a triable issue of fact as to his fair trial claim.

In sum, the court concludes that plaintiff has failed to establish a triable issue of fact as to his fair trial claim.  As a result, the court grants defendants' motion for summary judgment.[21]

## V.     Whether the individual defendants are entitled to qualified immunity

### A.     Legal framework

Qualified immunity protects government employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Second Circuit has articulated the following test when determining whether an officer is entitled to qualified immunity:

> A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[] . . . in light of the legal rules that were clearly established at the time it was taken.

---

[21] Because plaintiff cannot make out a triable issue of fact on any of his constitutional claims, plaintiff's conspiracy and failure to intervene claims fail as well.  *See Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) ("As it has been established that there was no constitutional violation, there can be no conspiracy."); *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim.").

*Manganiello*, 612 F.3d at 164 (internal citations omitted) (alterations in original).

Further, an officer is entitled to qualified immunity if there was arguable probable cause to charge the plaintiff. *Betts v. Shearman*, 751 F.3d 78, 82-83 (2d Cir. 2014). Arguable probable cause exists where, accounting for any new information learned after an arrest, "it was not manifestly unreasonable for [the officer] to charge [plaintiff]" with the crime. *Lowth*, 82 F.3d at 572.

## B.    Analysis

Defendants argue that UC 322, Detective Rios and Detective Mero are entitled to qualified immunity because there was, "at the absolute minimum, arguable probable cause" to prosecute plaintiff. Defs. Reply Br. at 9.

Plaintiff asserts that defendants are not entitled to qualified immunity because defendants "demonstrated an intentional, or at least reckless, disregard for proper police procedure and the constitutional rights of Plaintiff." Pl. Br. at 20.

The court concludes that it need not address whether defendants are entitled to qualified immunity as to plaintiff's malicious prosecution claim because there was probable cause to prosecute plaintiff.[22] *See Walston v. City of New York*, 289 F. Supp. 3d 398, 415 (E.D.N.Y. 2018), *aff'd*, 754 F. App'x 65 (2d Cir. 2019) (declining to reach defendants qualified immunity defense because the court had already determined that there was probable cause to prosecute plaintiff); *Walczyk v. Rio*,

---

[22] Defendants do not assert qualified immunity as a defense to plaintiff's fair trial claim.

496 F.3d 139, 154 (2d Cir. 2007) ("Where there is no viable constitutional claim,

defendants have no need of an immunity shield.").

## CONCLUSION

For the reasons discussed, the court GRANTS defendants' motion for

summary judgment.  Further, the Clerk of the Court is respectfully directed to

terminate the open motion at ECF No. 56.

SO ORDERED.


                                        /s/ Timothy M. Reif
                                        _____
Dated: May 31, 2024                     Timothy M. Reif, Judge
New York, New York                      United States Court of International Trade
                                        *Sitting by Designation*
                                        United States District Court for the
                                        Southern District of New York